# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### OCTOBER SESSION, 1998

FILED

March 31, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 03C01-9712-CR-00546** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **SULLIVAN COUNTY** |
| **VS.** | ) | |
| | ) | **HON. PHYLLIS H. MILLER** |
| **BILLY G. BARNETT,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Sentencing) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CRIMINAL COURT OF SULLIVAN COUNTY

FOR THE APPELLANT:

RICHARD A. SPIVEY
142 Cherokee Street
Kingsport, TN 37660

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

TODD R. KELLEY
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

H. GREELEY WELLS, JR.
District Attorney General

BARRY STAUBUS
Assistant District Attorney General
Blountville, TN 37617

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

## O P I N I O N

The petitioner, Joseph Barnett, appeals as of right from the denial of his petition for post-conviction relief by the Claiborne County Criminal Court. He seeks relief from his conviction following a jury trial for first degree murder, a Class A felony, resulting in a sentence of life imprisonment. He claims that the trial court incorrectly found that he received the effective assistance of counsel. Specifically, the petitioner contends that his trial attorney failed to preserve on the record his motion for a psychiatric expert, thereby precluding him from showing on appeal a particularized need for the expert. He also argues that his attorney was ineffective because he failed to conduct the motion hearing ex parte. The state argues that the trial court properly denied the post-conviction petition. We agree.

At the evidentiary hearing, the petitioner testified that he was confined to a wheelchair as a result of a house fire in 1983 that required both of his legs to be amputated. He said he was hospitalized for mental illness at Kalamazoo State Hospital in Michigan and Lakeshore Mental Health Institute in Knoxville. He said that from 1983 to 1990, he was taking various prescription drugs, and he often had blackouts. He said he was not present when his attorney made a motion for a psychiatric expert, and he did not know that his attorney intended to use insanity as a defense.

On cross-examination, the petitioner said that he believed the victim, his uncle, was not dead. He said he continued to believe that the victim was not dead, even after his attorney furnished him with the victim's death certificate and autopsy photographs.

Jessie Jones, the petitioner's mother, testified that the petitioner complained of a severe headache for three days before the murder. She said the petitioner previously

-2-

had been hospitalized for mental problems after he hit her. She said the petitioner thought the victim was still alive.

On cross-examination, Ms. Jones said she discussed the petitioner's mental problems with his attorney. She said the petitioner was withdrawn and would not talk to anyone but her. She said that at trial, the petitioner testified that he drank moonshine throughout the day of the murder.

The petitioner's trial attorney testified that the facts of the case were undisputed and that several witnesses saw the petitioner shoot the victim. He said he felt the petitioner's only viable defenses were mental deficiency and perhaps voluntary intoxication. He said that he filed a notice of his intent to use insanity as a defense on November 28, 1990. He testified that the petitioner refused to believe that the victim was dead.

The attorney testified that he believed that the law at the time of trial did not provide for psychiatric experts for indigent defendants in noncapital cases. He said that nevertheless, he made a motion for a psychiatric expert because he wanted to show that the petitioner's mental problems, combined with his use of drugs and alcohol, militated against premeditation and deliberation. He said that the motion was made orally, and it was not transcribed. He said that a few days later, when he realized the motion had not been made a part of the record, he orally synopsized the arguments made and the trial court's denial of his motion. The synopsis was as follows:

> Your Honor, this last Friday, April 4th, I filed a motion for an expert witness in this matter. I believe it is on file in the Clerk's office. We had on Wednesday, April 2nd, received the latest medical records from Lakeshore Mental Health and at that time, there was a mention in the neurological evaluation by Dr. Michael L. Eisenstadt, M.D., Ph.D. that Mr. Barnett had a mildly abnormal EEG, suffered from something called encephalopathy and that he recommended a CT scan to be run. We discovered on that date, Wednesday, April 2nd, that no CT scan had been run at Lakeshore Mental Health and we were told that it was simply a time problem. That they weren't able to get it run during the time that Mr. Barnett was there.

Upon conferring with a Dr. Eric S. Ingram,[1] who is a neuropsychologist . . . concerning the findings of encephalopathy and abnormal EEG, Dr. Ingram essentially made me aware of the fact that the defendant probably had some sort of cognitive brain damage which would affect his mental ability and capacity to understand his actions, although it might not mean that he was insane or that he was incompetent to stand trial could effect what happened at the time when this incident occurred [sic]. He suggested that Mr. Barnett, from those findings, could be suffering from traumatic stress disorder, a depressive disorder, and/or organic brain damage, as well as the intoxication that is in the record here. So, he suggested that a CT scan be run and quite likely that a CT scan would not show findings of encephalopathy, but that a MIR or a P-3-100 evoked potentials examination would be more likely to show the extent of whatever thought pattern disorder there could have been.

In response to that motion - we brought that up off the record on Friday and I believe it was Your Honor's ruling that at that time our motion for an expert witness was denied, but that you suggested that we get together and have a CT scan run on Monday, which would have been yesterday, April 8th. That CT scan was run at the local hospital . . . [The doctor] has orally given us a report that the CT scan showed nothing abnormal. He also informed me that a CT scan would show things like tumors and things that were abnormal within the growth of the brain, but something along the lines of encephalopathy would be more distinguished by things like EEGs and MIRs, and P-3-100s types of tests.

So, that is the status of it now. And I would like to preserve my objection to the ruling . . .

The petitioner's trial attorney also said he filed a written motion setting forth the tests he believed Dr. Engum would perform and why those tests were necessary.

On cross-examination, the petitioner's trial attorney said that the record fairly and accurately depicted his recollection of the presentation made to the trial court regarding his motion for a psychiatric expert. He said that nothing pertinent appeared to be left out of the record and that he included everything that he thought was important in order to perfect the record for appeal. He said that after his motion was denied, he could not find any witnesses, expert or lay, to support a theory of mental disease.

Martha Yoakum, the petitioner's attorney on direct appeal, testified that she believed the petitioner's trial attorney was ineffective by failing to preserve the record

---

[1] The synopsis refers to the doctor as "Eric S. Ingram," but the record reflects that his name is actually Eric S. Engum.

-4-

regarding his motion for a psychiatric expert and by failing to marshall more proof of a particularized need for a psychiatric expert. She said that when she argued the petitioner's case before the supreme court, their questions indicated that they were very concerned that the motion hearing was not transcribed. She conceded that the court's written opinion did not allude to this concern. She said that the petitioner's trial attorney should have had friends or family members testify at the motion hearing regarding the petitioner's strange behavior in order to show a particularized need for an expert. She said she believed that without the testimony of an expert psychiatrist, the petitioner was denied a fair trial.

No other witnesses were presented at the evidentiary hearing. At its conclusion, the trial court determined that the petitioner was not denied the effective assistance of counsel, finding as follows:

> The record reveals that at the time this case was being processed through the Criminal Court the following factors all came into play:
>
> (1) Tennessee statutes appeared to authorize such extraordinary expenses in capital cases but not in non-capital cases. (The instant case was not a capital case).
>
> (2) The Court expressed its sympathy for the request but declined to contravene the statute.
>
> (3) Counsel . . . raised the question and preserved it for review on appeal.
>
> (4) The Tennessee Department of Mental Health found the petitioner competent to stand trial and determined that a defense of insanity could not be supported. The Mental Health Department report suggested that a CT scan might be revealing (why that Department did not conduct such a scan is not known).
>
> (5) Since the scan was suggested by the Department of Health, but not performed, the Trial Court acting in the fullness of precaution ordered it done at the Claiborne County Hospital, with the expense to be taxed as costs. The test was done and the report was negative.
>
> (6) Trial counsel produced a letter from a qualified expert setting out a large number of conditions which might be revealed by further and more detailed study by an expert of defendant's choosing. This Court felt that the extraordinary authorization of funds to determine what might be revealed was outside its statutory authority.
>
> . . . .

The argument that trial counsel should have put more evidence in the record on the subject presupposes that such evidence existed at that time. There is no showing that such evidence was available. There is no showing based on the post-conviction hearing that such evidence existed.

. . . .

This Court finds that defense counsel did not render "ineffective assistance of counsel" but rather preserved a question of first impression for appeal, put as much evidence in the record as he had available and otherwise adequately represented the defendant/petitioner.

The procedural history of this case warrants explanation. In 1985, the United State Supreme Court held in a capital case the following:

[W]hen a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.

Ake v. Oklahoma, 470 U.S. 68, 83, 105 S. Ct. 1087, 1096 (1985). The Court also indicated that a hearing on a defendant's motion for a psychiatric expert should be held ex parte. Id., 470 U.S. at 83, 105 S. Ct. at 1097. On direct appeal to this court, the petitioner in the present case relied on Ake to support his contention that the trial court should have granted his motion for a psychiatric expert. However, this court concluded that the holding in Ake was limited to capital cases and that there was no statutory authority in Tennessee for the appointment of a psychiatric expert in noncapital cases. State v. Joseph Barnett, No. 03C01-9304-CR-00113, Claiborne County (Tenn. Crim. App. June 28, 1994), aff'd on other grounds, 909 S.W.2d 423, 424 (Tenn. 1995).

On appeal, however, our supreme court held that Ake was not limited to capital cases. Barnett, 909 S.W.2d at 424. The court determined that an ex parte hearing is required on a defendant's request for a psychiatric expert. Id. at 429. The court also held that due process requires that an indigent defendant have a fair opportunity to present his defense, including in noncapital cases. Id. at 429. The court held that in order for an indigent defendant to receive a state-funded psychiatric expert, the defendant must make a threshold showing of a particularized need for the expert. Id. at

-6-

431. To establish this need, the defendant "must show that a psychiatric expert is necessary to protect his right to a fair trial. Unsupported assertions that a psychiatric expert is necessary to counter the State's proof are not sufficient." Id. The court concluded that in the petitioner's case, the petitioner failed to establish a particularized need for an expert, concluding that the tests sought by him were only in the "'mere hope or suspicion' that favorable evidence could be obtained." Id. (quoting State v. Mills, 420 S.E.2d 114, 117 (1992)).

The petitioner now claims that the trial court erroneously denied his post-conviction petition, arguing that his trial attorney's failure to preserve the record regarding his motion for a psychiatric expert resulted in an inability to show a particularized need for an expert. Thus, he argues his trial attorney was ineffective. He also argues that his trial attorney was ineffective by failing to conduct the motion hearing ex parte. Finally, he argues that if a psychiatric expert had been available at trial, the expert would have testified that the petitioner's intoxication at the time of the offense precluded a finding of premeditation and deliberation. The state contends that the petition was properly denied.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is upon the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n. 2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974) and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

We also note that the approach to the issue of the ineffective assistance of counsel does not have to start with an analysis of an attorney's conduct. If prejudice is not shown, we need not seek to determine the validity of the allegations about deficient performance. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.

In a post-conviction case, the burden is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-210(f). On appeal, we are bound by the trial court's findings unless we conclude that the evidence preponderates against those findings. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). The petitioner has the burden of illustrating how the evidence preponderates against the judgment entered. Id. We conclude that the petitioner has failed to meet this burden.

The petitioner has failed to show how his trial attorney's failure to transcribe the hearing for a psychiatric expert prejudiced him. First, he presented no evidence at the post-conviction evidentiary hearing to support his assertion that there was a

particularized need for a psychiatric expert. There was no testimony from any witness, lay or expert, regarding the petitioner's need for further psychiatric evaluation that was not presented at the motion hearing or at trial. In addition, the petitioner has failed to show how the manner in which his trial attorney preserved the record prejudiced him. Obviously the better practice would have been for the trial attorney to have transcribed the motion hearing. However, on direct appeal, the appellate courts had available for their review the restatement of the argument at the motion hearing to which no objection was made by the state, a voluminous set of the petitioner's medical records, a CT scan, and the trial transcripts, all of which document the petitioner's mental history. Thus, there was ample evidence from which a reviewing court could have determined whether the petitioner satisfied the threshold showing of a particularized need for a psychiatric expert.

We also do not believe that the petitioner's trial attorney was ineffective for failing to hold the motion hearing ex parte. Generally, ex parte hearings are disfavored in Tennessee. Barnett, 909 S.W.2d at 428. However, in Barnett, our supreme court determined that Ake requires an ex parte hearing on a motion for a psychiatric expert. Barnett, 909 S.W.2d at 428. Before our supreme court's decision in Barnett, there was no reason for petitioner's trial attorney to anticipate that an ex parte hearing would be required. We do not believe that the petitioner's trial attorney was ineffective for failing to anticipate an appellate court decision, nor do we believe that the petitioner was prejudiced.

Finally, the petitioner argues that his attorney was ineffective because if his attorney had made the requisite showing of a particularized need, and if the hearing had been transcribed, then a psychiatric expert would have testified about the effects of the petitioner's voluntary intoxication on his mental state at the time of the offense. The

petitioner's argument is nothing more than speculation, and the petitioner failed to offer any evidence at the evidentiary hearing to support such a contention.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
Gary R. Wade, Presiding Judge

_____
David H. Welles, Judge